UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

**08 CV 00423**

HELEN SIEGER and KINGSBRIDGE
HEIGHTS REHABILITATION CARE
CENTER, INC.,

                        Plaintiffs,

              -against-

GEORGE GRESHAM, individually and in
representative capacity as President of Local
1199/SEIU, United Health Care Workers East,
MICHAEL RIFKIN, individually and in his
representative capacity as Vice President of
Local 1199/SEIU, United Health Care Workers
East, JOHN DOE, individually and in his
representative capacity as an Offical of Local
1199/SEIU, United Health Care Workers East,
JANE DOE, individually and in her
representative capacity as an Offical of Local
1199/SEIU, United Health Care Workers East
and JAY SACKMAN,

                      Defendants.
-------------------------------------------------------------X

2008 Civ. _____ (     )

**NOTICE OF PETITION
FOR REMOVAL**

      PLEASE TAKE NOTICE that a Petition removing the above-captioned Complaint, Index

No. 116785/07, from the Supreme Court of the State of New York, County of New York, to the

United States District Court for the Southern District of New York, a copy of which Petition is

annexed hereto, was duly filed this day in the United States District Court for the Southern

District of New York.

Dated: January 16, 2008

LEVY RATNER, P.C.

By: _____

Allyson L. Belovin
*Attorneys for Defendants*
Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100 - phone
(212) 627-8182 - fax
abelovin@lrbpc.com

TO:    Clerk of the Court
New York Supreme Court
County of New York

Joel E. Cohen, Esq.
McDermott Will & Emery LLP
*Attorneys for Plaintiffs*
340 Madison Avenue
New York, New York 10173

JUDGE CEDARBAUM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

HELEN SIEGER and KINGSBRIDGE
HEIGHTS REHABILITATION CARE
CENTER, INC.,

:
:
:
:
:

Plaintiffs,    :

:

-against-    :

:

GEORGE GRESHAM, individually and in
representative capacity as President of Local
1199/SEIU, United Health Care Workers East,
MICHAEL RIFKIN, individually and in his
representative capacity as Vice President of
Local 1199/SEIU, United Health Care Workers
East, JOHN DOE, individually and in his
representative capacity as an Offical of Local
1199/SEIU, United Health Care Workers East,
JANE DOE, individually and in her
representative capacity as an Offical of Local
1199/SEIU, United Health Care Workers East
and JAY SACKMAN,

:
:
:
:
:
:
:
:
:
:
:
:
:

Defendants.    :
--------------------------------------------------------------X

# 08 CV 00423

2008 Civ. _____ (      )

**PETITION FOR REMOVAL
OF STATE COURT ACTION**

RECEIVED

JAN 16 2008

U.S.D.C. S.D. N.Y.
CASHIERS

To the Judges of the United States District Court for the Southern District of New York,

the Petition for Removal of State Court Defendants George Gresham, individually and in his

representative capacity as president of Local 1199/SEIU, United Healthcare Workers East,

Michael Rifkin, individually and in his representative capacity as Vice President of Local

1199/SEIU, United Healthcare Workers East, John Doe, individually and in his representative

capacity as an Official of Local 1199/SEIU, United Healthcare Workers East, Jane Doe,

individually and in his representative capacity as an Official of Local 1199/SEIU, United

Healthcare Workers East and Jay Sackman (collectively referred to as "Defendants"), shows

that:

1.      On the 18th day of December 2007, State Court Plaintiffs Helen Sieger ("Sieger")

and Kingsbridge Heights Rehabilitation Care Center, Inc. ("Center") (collectively referred to as

"Plaintiffs") commenced an action against Defendants in the Supreme Court of the State of New

York, County of New York entitled *"Helen Sieger and Kingsbridge Heights Rehabilitation Care*

*Center, Inc. against George Gresham, individually and in his representative capacity as*

*president of Local 1199/SEIU, United Healthcare Workers East, Michael Rifkin, individually*

*and in his representative capacity as Vice President of Local 1199/SEIU, United Healthcare*

*Workers East, John Doe, individually and in his representative capacity as president of Local*

*1199/SEIU, United Healthcare Workers East, Jane Doe, individually and in his representative*

*capacity as president of Local 1199/SEIU, United Healthcare Workers East and Jay Sackman,"*

Index No. 116785/07.

2.      Defendants were served with Plaintiffs' Summons and Complaint on December

19, 2007, a copy of which is annexed hereto as Exhibit A.

3.      In this lawsuit, Plaintiffs seek to recover damages against Defendants that they

allegedly suffered as a result of a labor dispute between Plaintiffs and Defendants.

4.      Defendants are officers of 1199SEIU, United Healthcare Workers East ("1199" or

Union"), a labor organization within the meaning of §2(5) of the Labor Management Relations

Act ("LMRA"), 29 U.S.C.§152(5).  1199 is the certified collective bargaining representative of

certain employees employed at Defendant Center, which is an employer in an industry affecting

commerce within the meanings of §§ 2 and 301 of the LMRA, 29 U.S.C. §§ 152 and 185.

5.      Although Plaintiffs have styled their claims as ones arising under New York State

law, the question of Plaintiffs' entitlement to relief turns solely on whether Defendants' actions,

occurring in the context of a labor dispute, are protected under federal labor law.  That is, as all of the actions allegedly taken by Defendants' were in furtherance of its dispute with Plaintiffs regarding the re-negotiation of a collective bargaining agreement (See, Complaint ¶¶ 17, 18, 10, 25, 26, 27, 63), each of those alleged actions is either protected by LMRA §7, 29 U.S.C. §157, or constitutes an unfair labor practice in violation of LMRA §8, 29 U.S.C. §158.  As such, the LMRA, completely pre-empts the state law cause of action.  <u>San Diego Building Trades v. Garmon</u>, 359 U.S. 236 (1959); see also <u>Machinists v. Wisconsin Emp. Rel. Comm'n</u>, 427 U.S. 132 (1976).

6.     Therefore, because Plaintiffs' claims are completely preempted by federal law, and a determination of the parties' rights is governed solely by federal law, this action is removable to federal court.  <u>Beneficial National Bank, et al. v. Anderson</u>, 539 U.S. 1 (2003). Although the complaint is asserted under state law, "a plaintiff may not defeat removal by clothing a federal claim in state garb . . ." <u>Traveler's Indem. Co. v. Sarkisian</u>, 794 F.2d 754, 758 (2d Cir. 1986).  Where "the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading." <u>Id.</u> (internal quotations omitted).

7.     As Plaintiffs' claims for relief necessarily arise under the laws of the United States, it may be removed to this Court under the provisions of 28 U.S.C. §1441(b) without regard to the citizenship of the parties.

8.     This petition is filed within thirty (30) days after Defendants received copies of the Summons and Complaint, as required by 28 U.S.C. §1446(b).

9.     All Defendants consent to the removal of Plaintiffs' action to this Court.

10.     This action was originally filed in a state court in this District.  Therefore, venue is proper in this Court as provided by 28 U.S.C. §§ 1441(a) and 1446(b).

11.     By filing this Petition for Removal, Defendants do not waive any defenses that may be available to them.

12.     No previous petition for removal of this action has been made.

WHEREFORE, Defendants pray that the above action now pending against them in the Supreme Court of the State of New York, County of New York be removed therefrom to this Court.


Dated: New York, New York
       January 16, 2008


                                        LEVY RATNER, P.C.


                                        By: _Allyson L. Bel_____·_____
                                            Allyson L. Belovin (AB 3702)
                                            *Attorneys for Defendants*
                                            80 Eighth Avenue, 8th Floor
                                            New York, New York 10011
                                            (212) 627-8100 - phone
                                            (212) 627-8182 - fax
                                            abelovin@lrbpc.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

HELEN SIEGER and KINGSBRIDGE      :
HEIGHTS REHABILITATION CARE
CENTER, INC.,      :

          Plaintiffs,      :

    -against-      :

GEORGE GRESHAM, individually and in :
representative capacity as President of Local
1199/SEIU, United Health Care Workers East, :
MICHAEL RIFKIN, individually and in his
representative capacity as Vice President of :
Local 1199/SEIU, United Health Care Workers
East, JOHN DOE, individually and in his :
representative capacity as an Official of Local
1199/SEIU, United Health Care Workers East, :
JANE DOE, individually and in her
representative capacity as an Official of Local :
1199/SEIU, United Health Care Workers East
and JAY SACKMAN. :

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 116785/07
Date Purchased: 12/18/07

**SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

DEC 18 2007

NOT COMPARED
WITH COPY FILE

To the Above-Named Defendants:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer judgment will be taken against you by default for the relief demanded in the

complaint.

Venue is proper in this county pursuant to CPLR 503 because Defendants regularly

conduct business and their principal office is located in the County of New York, State of New

York.

Dated: New York, New York
       December 18, 2007

                                        MCDERMOTT WILL & EMERY LLP

                                        By: _____
                                            Joel E. Cohen, Esq.

                                        340 Madison Avenue
                                        New York, New York 10173
                                        (212) 547-5400

                                        Attorneys for Plaintiffs
                                        Helen Sieger and Kingsbridge Heights
                                        Rehabilitation Care Center, Inc.


Defendants' Address:
Hanan B. Kolko, Esq.
Meyer, Suozzi, English & Klein, P.C.
1350 Broadway, Suite 501
New York, NY 10018

Attorney for Defendants
George Gresham, Michael Rifkin,
Jay Sackman and  John and Jane Does


NYK 1136775-1.057806.0011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

HELEN SIEGER and KINGSBRIDGE                    :
HEIGHTS REHABILITATION CARE
CENTER, INC.,                                    :

            Plaintiffs,                         :

      -against-                                 :

GEORGE GRESHAM, individually and in       :
representative capacity as President of Local
1199/SEIU, United Health Care Workers East,    :
MICHAEL RIFKIN, individually and in his
representative capacity as Vice President of    :
Local 1199/SEIU, United Health Care Workers
East, JOHN DOE, individually and in his         :
representative capacity as an Official of Local
1199/SEIU, United Health Care Workers East,    :
JANE DOE, individually and in her
representative capacity as officers or members  :
of Local 1199/SEIU, United Health Care
Workers East and JAY SACKMAN.

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDEX NO. _116785/07_

**COMPLAINT**

NEW YORK
TY CLERK'S OFFICE

: 18 2007

T COMPARED
TH COPY FILE

      Helen Sieger ("Ms. Sieger") and Kingsbridge Heights Rehabilitation Care Center, Inc.

(the "Center") (collectively "Plaintiffs"), by and through their attorneys McDermott Will &

Emery LLP, for their complaint against George Gresham ("Mr. Gresham"), individually and in

his representative capacity as President of Local 1199/SEIU, United Health Care Workers East,

Michael Rifkin ("Mr. Rifkin"), individually and in his representative capacity as Vice President

of Local 1199/SEIU, United Health Care Workers East, John and Jane Does (collectively

referred to herein as "Messers Doe"), individually and in their representative capacities as

officers or members of Local 1199/SEIU, United Health Care Workers East and Jay Sackman

("Mr. Sackman"), individually and in his representative capacity as the former Head of Local

1199/SEIU, United Health Care Workers East's Nursing Home Division (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.    This is an action for damages arising out of Defendants' tortious interference with the Plaintiff' business relations.  Specifically, Defendants have maliciously and improperly engaged in a course of conduct for purposes of retaliating against Ms. Sieger and putting the Center out of business because she refused to enter into a collective bargaining agreement with Local 1199/SEIU, United Health Care Workers East ("Local 1199" or the "Union") on the terms that Local 1199 demanded.

## PARTIES, JURISDICTION AND VENUE

2.    The Center is a sole proprietorship organized under the laws of the State of New York, with its principal place of operations located at 3400-26 Cannon Place, Bronx, 10463.

3.    Ms. Sieger is the Chief Executive Officer and sole owner of the Center.

4.    Upon information and belief, Mr. Gresham is an individual residing in the state of New York.  At all relevant times, Ms. Gresham has served as President of Local 1199 with its principal place of business located at 330 West 42nd Street, New York, New York 10036.

5.    Upon information and belief, Mr. Rifkin is an individual residing in the state of New York.  At all relevant times, Mr. Rifkin has served as Executive Vice President of Local 1199 with its principal place of business located at 330 West 42nd Street, New York, New York 10036.

6. Upon information and belief, Mr. Gresham, Mr. Rifkin and Mr. Sackman have engaged other individuals, known herein as Messers Doe, residing in the state of New York to assist them in their activities describer herein. At all relevant times, Messers Doe have served as officers, in other official capacities or members of Local 1199 with their principal place of business located at 330 West 42nd Street, New York, New York 10036.

7. Jurisdiction is proper because Defendants' unlawful actions were and continue to take place in New York.

8. Venue is proper pursuant to New York Civil Practice Law and Rule § 503 because Defendants conduct business in this District.

## STATEMENT OF CLAIMS

### The Business of the Center

9. The Center is a New York State-licensed skilled nursing facility that provides residential short-term and long-term rehabilitation, as well as long-term nursing care to patients. The Center is certified and capable of providing quality residential care to approximately 400 patients.

10. The Center provides services to individuals and families throughout the New York City area. Plaintiffs' clients are individuals referred to the Center by various hospitals in the New York City area as well as private individuals who independently seek out and enter into contracts for the Center's services. Plaintiffs' also maintain business relationships with various vendors, suppliers and other healthcare institutions throughout the state which relationships are essential to the proper operation of the Center. (The forgoing description of Plaintiffs' clients and business shall collectively be referred to hereinafter as the "Business").

11.    Given that a portion of the Center's patients are privately referred to the Center, it is necessary for Plaintiffs' to maintain the Center's goodwill and patient relationships in order to secure future business relationships.

12.    The quality of the Center's patient care and its compliance with state and federal regulations is monitored by the New York State Department of Health (the "DOH").

### The Center and Ms. Sieger's Relationship with Defendants and the Union

13.    In order to provide quality care to the Center's residents, Ms. Sieger employees both unionized and non-unionized employees.    The unionized employees are represented by Local 1199.

14.    Local 1199 is a labor union that represents individuals employed in the homecare, hospital and nursing home industries, as well as other healthcare settings.  Local 1199 has hundreds of contracts with employers in every sector of the healthcare industry.  The Union's New York City and Long Island Region has approximately 200,000 members which includes most of the city's hospital workers as well thousands of employees in nursing homes and other healthcare facilities.

15.    Defendants are Union officials – members of the highest elected body of Union representatives – and/or members of Local 1199.  At all relevant times, Defendants *inter alia* directed, coordinated, guided and supervised all of the affairs of the Union and the activities of the other Union officers and members.  Defendants are/were also responsible for directing and being in charge of all collective bargaining efforts on behalf of the Union.  Upon information and belief, at all relevant times, Defendants directed, coordinated and supervised each other's conduct and the conduct of other Union officers and members.

16.    Given their very distinct business purposes, Ms. Sieger, the Center and Defendants are not competitors within the healthcare industry.

-4-

17.    Prior to April 30, 2005, the terms and conditions of the Center's unionized employees were governed by a collective bargaining agreement entered into by Ms. Sieger, on behalf of the Center, and Local 1199, however, on April 30, 2005, the parties collective bargaining agreement expired.

18.    The only reason a renewed collective bargaining agreement has failed to come to fruition is because the parties could not come to an agreement on the appointment of an acceptable arbitrator to hear contract disputes. Ms. Sieger has insisted that all arbitrators be chosen from panels submitted by the American Arbitration Association and Local 1199 has insisted that Martin Scheinman be the permanent arbitrator.

19.    Following the expiration of the contract, Ms. Sieger, Mr. Gresham, Mr. Rifkin, Mr. Sackman and Messrs Doe engaged in several attempts to renegotiate a collective bargaining agreement, however, no contract was agreed to solely due to this dispute over who the arbitrator would be.

20.    Upon information and belief, the arbitrator appointed by the Union and opposed by Ms. Sieger, Martin Scheinman ("Mr. Scheinman"), issues decisions in the Union's favor when deciding disputes important to the Union. In the past, Mr. Scheinman ordered the Center to pay him one million dollars as an "escrow agent" for damages to the Union that had yet to be determined. The actual damages, as eventually determined by Mr. Scheinman, were approximately half of the escrow amount, yet Mr. Scheinman kept the entire amount for approximately one year and assessed fees for acting as the "escrow agent."

21.    Mr. Scheinman's decisions often award unjustified and extraordinary monetary damages to the Union, some of which are used for improper purposes to the benefit of the Union officials and nursing home operators who comply with the Union's directives.

22. In August 2005, Mr. Scheinman issued an arbitration decision in favor of the Union instructing Ms. Sieger to pay the Union's benefit funds approximately five hundred thousand dollars plus interest, which amount included payments to the funds that were previously waived and that no other nursing home facility in New York was required to pay.

*Defendants' Wrongful Interference with Plaintiffs' Business*

23. In light of the Defendants' positions and extensive involvement in the Union, Local 1199's history representing hundreds of thousands of employees in the healthcare industry and its representation of the Center's employees, Defendants were and at all relevant times had full knowledge of the Plaintiffs' client base, vendors, affiliations, source of referrals and other important business relationships.

24. In addition, due to its donating large sums of money to state political figures, Defendants have great political influence with state and local government officials and with virtually all entities engaged in New York's healthcare industry.

25. Upon information and belief, Mr. Gresham, Mr. Rifkin, Mr. Sackman and Messrs Doe, individually and in their capacities as representatives of Local 1199, have engaged in and continue to engage in conduct aimed at punishing, retaliating against and otherwise making an example for the New York healthcare industry out of Ms. Sieger personally and extinguishing Plaintiffs' Business because she, on behalf of the Center, took a position in bargaining that the Union found objectionable.

26. Since the contract expired in April 2005, Defendants have made numerous threatening phone calls and statements to Ms. Sieger and her employees warning that the Local 1199 would cause problems for and close the Center in retaliation for Ms. Sieger's position.

27. Upon information and belief, since 2005, Defendants have initiated or have been the moving force behind several civil actions and governmental investigations against

the Center initiated by the Union or by current or former Union members employed by the Center. Defendants have initiated these actions and/or have urged Union members to commence these civil actions to punish Ms. Sieger for opposing the Union and by applying economic pressure on Ms. Sieger and the Center in the form of legal defense costs and fees.

28. In addition, Defendants have continuously threatened Ms. Sieger's employees in effort to improperly retaliate against Ms. Sieger for objecting to the Union's practices. Specifically, Defendants have directed the 1199 Benefit Fund, which provides health benefits to the Center's unionized employees, to cut-off all health benefits retroactively.

29. Upon information and belief, Defendants have directed the 1199 Benefit Fund to cut-off health benefits to some employees and not others.

30. Defendants have also threatened violence, physical harm and have otherwise intimidated employees who have opposed striking the Center or refuse to assist the Union and/or Defendants with its malicious campaign to retaliate against Ms. Sieger.

31. November 26, 2007, the Union reneged a scholarship offer to an employees' daughter when the employee refused to join 1199's picketing against the Center.

32. Ms. Sieger has at all relevant times refused to succumb to Defendants' improper tactics and pressures. As a result thereof, Defendants, individually and in their representative capacities, devised a plan to destroy Plaintiffs' Business and to put Ms. Sieger and the Center out of business.

33. Upon information and belief, Defendants, individually and in the capacities as representatives of Local 1199, have authorized, coordinated and engaged in conduct directed at persuading other businesses and patients not to conduct business with Ms. Sieger and the Center.

34. On November 27, 2007, Mr. Rifkin told Ms. Sieger that Defendants intended to "put her out of business."

35. Thereafter, Rifkin told Ms. Sieger that Defendants began a political campaign to convince the Commissioner Health of the State of New York (the "Commissioner") to revoke Ms. Sieger's operating certificate with respect to her operation of the Center, in order to appoint a receiver to take control of the Center and that their request is now pending "in the hands of a judge."

36. Pursuant to New York Public Health Law Section 2810, the Commissioner may revoke a health facility's operating certificate and appoint a receiver "as a means of protecting the health, safety and welfare of the patients in a residential health care facility." Once a health facility's operating certificate is revoked, the Commissioner "shall apply to the supreme court in the county where the facility is situated for an order directing the owner of the land and/or structure on or in which the facility is located to show cause why the commissioner, or his designee, should not be appointed receiver to take charge of the facility."

37. Appointing a receiver to the Center will extinguish Ms. Sieger's ownership and control of the Center. More specifically, if appointed, the receiver will gain full control of the Center and all profits, and put Plaintiffs' Business out of operation. Defendants have full knowledge of the consequences of their request to appoint a receiver to the Center and have specifically sought such consequences.

38. Upon information and belief, Defendants advised the DOH, Commissioner or other representatives of the DOH that the Center, under Ms. Sieger's control and operation, did not provide quality patient care pursuant to DOH certification requirements and is in danger of imminent financial collapse.

39.    On November 27, 2007, Mr. Rifkin told Ms. Sieger that Defendants made the foregoing statements to the DOH with the intent to harm the Plaintiffs' continuing business relations and reputation in the industry.

40.    At all relevant times, the Center has successfully performed in key quality measure areas evaluated by the DOH and is the highest rated facility among all nursing home facilities in Bronx, New York.    Accordingly, the Center's certifications and Ms. Sieger's operation and control of the Center has never been in jeopardy, and thus, Defendants intentionally misrepresented information to the Commissioner in order to support their requests to appoint a receiver, revoke Ms. Sieger's operating certificate and close the Center.

41.    On November 27, 2007, Mr. Rifkin told Ms. Sieger that Defendants met with a representative from the DOH in connection with the Defendants' request for DOH to appoint a receiver to the Center and that Defendants' request is currently "in the hands of a judge."

42.    Mr. Rifkin also told Ms. Sieger that Defendants' efforts to put Ms. Sieger out of business were because she objected to the Union appointing Mr. Scheinman as the arbitrator of disputes between Local 1199 and the Center and that she had to be made "an example of."

43.    Mr. Rifkin also told Ms. Sieger that Michael Melnicke ("Mr. Melnicke"), Ms. Sieger's estranged brother-in-law, who owns and operate competing nursing homes and has great political influence with state and local government officials, has an "agenda against" Ms. Sieger and is assisting in Defendants' efforts to close the Center and destroy Ms. Sieger's Business.

44.    Upon information and belief, Defendants' and Mr. Melnicke are aiding each other by using their influence and personal and business relationships in the healthcare industry to remove Ms. Sieger from control of the Center and have the Commissioner to appoint Mr. Melnicke as the receiver of the Center.

45.    Throughout their November 27th conversation, Mr. Rifkin made numerous threatening remarks to Ms. Sieger and explicitly threatened the future of the Center and her Business.

46.    Mr. Rifkin told Ms. Sieger that the Defendants have improperly used and threatened to continue to use their political influence in the healthcare and other industries to the detriment of the Center and Ms. Sieger's Business. As an example, Mr. Rifkin explained that Defendants were personal friends and has influence with individuals employed at New York City area hospitals who are responsible for referring patients to nursing homes.

47.    Mr. Rifkin told Ms. Sieger that the Union directs patients to Audrey Weiner, CEO of competing facility, as an example of an employer whose high patient census is due to Defendant's influence in rewarding nursing homes and employers that cooperate with Defendants and the Union.

48.    Upon information and belief, Mr. Rifkin and Defendants have used and will continue to use their political influence in the healthcare and other industries to control the Center's patient census.

49.    Upon information and belief, Defendants have improperly intimidated, threatened or otherwise persuaded employees at New York City area hospitals to refrain from referring patients to the Center and, instead, refer patients to competing nursing homes, thereby, wrongfully extinguishing the Center's continuing business relationships with area hospitals and

healthcare facilities. Defendants' conduct has recently resulted in fewer hospital referrals to the Center and the Center's low census.

50.    Mr. Rifkin also told Ms. Sieger that Defendants similarly engaged in conversations with Andrew Cuomo, New York State Attorney General, in which Defendants discussed their intent to destroy the Center and Ms. Sieger's Business in cooperation with Mr. Melnicke.

51.    In furtherance of Defendants' plan and continuous efforts to destroy Plaintiffs' Business, on or about November 28, 2007, Defendants called on Union members to picket the Center. During the demonstration, Union members congregated outside of the Center and members chanted and carried signs stating, "Helen Sieger Must Go" and "Close It Down." The Union members' chants and signs were unrelated to any outstanding labor disputes between the Union and Plaintiffs' and were specifically directed at punishing Ms. Sieger.

52.    Upon information and belief, Defendants authorized and approved the Union members conduct and statements during the strike with the intent to harm Plaintiffs' Business, goodwill and reputation in the industry.

53.    In December 2007, Defendants, through the Union, organized a massive rally at the Center to take place on December 22, 2007. Defendants scheduled the rally for a Saturday because Defendants are well aware that Ms. Sieger is an Orthodox Jew and Sabbath observer and, thus, would not be in a position to defend the Center or its patients at the time.

54.    In December 2007, Defendants caused a newspaper to publish false and misleading statements in the press indicating that the Center is in danger of "imminent financial collapse" and faces "instability of ownership." Upon information and belief, Defendants

published these statements in an effort to ruin Plaintiffs' present and future business relationships.

55.    Upon information and belief, Defendants, individually and in their representative capacities, authorized and approved all of the above-described conduct.

56.    As a result of the above-described dishonest, unfair and improper conduct by Defendants, Ms. Sieger and the Center have been and continue to be harmed.

## FIRST CAUSE OF ACTION
### Tortious Interference with Prospective Business Relations

57.    The Center and Ms. Sieger repeat and reallege each and every allegation contained in paragraphs 1 through 50 above as though fully set forth herein.

58.    The Center and Ms. Sieger has business relationships with its patients, clients, vendors and other healthcare facilities from which it has a reasonable expectation of future contract rights and prospective economic advantages.

59.    Through their relationship with Mr. Melnicke, representation of the Center's employees and extensive knowledge of the healthcare industry, Defendants had actual knowledge of the Center and Ms. Sieger's longstanding and hard-earned relationships with its patients, clients, vendors and other healthcare facilities, as well as the Center and Ms. Sieger's expectation of economic benefit from such Business.

60.    Defendants nevertheless knowingly communicated and/or authorized communications by others to the Commissioner (or other representatives) of the DOH and the public, false, misleading and disparaging remarks about Plaintiffs', with a specific intent to interfere in the Center and Ms. Sieger's relationships with its patients, clients, vendors and healthcare facilities and to damage and harm the Center and Ms. Sieger's Business.

61.    These knowingly false, misleading and disparaging communications proximately caused the Center and Ms. Sieger to suffer the impairment of, and the total loss of, business relationships with certain patients, clients, vendors and healthcare facilities that the Center and Ms. Sieger reasonably expected to maintain.

62.    Through the initiation or involvement in various lawsuits and government investigations, Defendants have sought to harass Ms. Sieger and the Center, tarnish her reputation in the industry and make her expend substantial legal fees so as to support their efforts to have the DOH appoint a receiver at the Center and remove Ms. Sieger as the Center's operator.

63.    Defendants' interference with the Center and Ms. Sieger's business relationships was done willfully, wantonly, recklessly, maliciously in order to damage the Center and Ms. Sieger and their relationships with its patients, clients, vendors and healthcare facilities, in order to punish, retaliate, impose dire economic consequences and otherwise make an example of Ms. Sieger because she to took a position in bargaining that objected to Defendants' and the Union's customary improper business practices.

64.    As a result of Defendants' conduct, the Center and Ms. Sieger have suffered and continue to suffer severe and irreparable damages as well as economic loss due to the lost future business and lost goodwill.

**WHEREFORE,** plaintiffs the Center and Ms. Sieger, pray that judgment be entered in its favor and against defendants George Gresham, Michael Rifkin, Jay Sackman and John and Jane Does, as follows:

1. Awarding Plaintiffs damages on the cause of action against the defendants in an amount to be determined at trial.

2. Requiring defendant to pay all the costs, including attorneys' fees, incurred by Plaintiff in this action and in taking other steps to pursue its remedies.

3. Granting such other relief as the Court may deem appropriate.

Dated: New York, New York
      December 18, 2007

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By: _____
    Joel E. Cohen

340 Madison Avenue
New York, New York 10173
(212) 547.5400

Attorneys for Plaintiffs
Helen Sieger and Kingsbridge Heights
Rehabilitation Care Center, Inc.

NYK 1135850-2.057806.0011

-14-